# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Cellular telephone assigned call numbers 414.460.1820, 414.243.6906, 414.949.2951, (the "Target Cellular Devices") further described in Attachment A

Case No. 20-MJ-76

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841(a)(1) and 846.

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

~~Clinton Blauser, USMS~~ Laura S. Kwaterski
Printed Name and Title

Sworn to before me and signed in my presence:

Date: 2/21/2020

_____
Judge's signature

City and State: Milwaukee, Wisconsin          Honorable William E. Duffin, Magistrate Judge
Printed Name and Title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Clinton Blauser, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the locations of the cellular devices assigned call numbers 414.460.1820, 414.243.6906, and 414.949.2951 (the "Target Cellular Devices"), which are described in Attachment A.

2. I am employed as I am employed as a Deputy with the United States Marshals Service (USMS) and have held that position for over 9 years. Prior to being employed with the United States Marshals Service, I spent three years working for the Allen County Sheriff's Department in Allen County, Indiana, as a Police Officer and a Confinement Officer. As part of my duties in my current position, I conduct investigations to locate federal and state fugitives.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. One purpose of applying for this warrant is to determine with precision the locations of the Target Cellular Devices. However, there is reason to believe the Target Cellular Devices are currently located somewhere within this district because the users

of the Target Cellular Devices (Alfonso GREER; Rico SMITH; Lamar JOHNSON) are known to spend most of their time in this district. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Devices outside the district provided the devices are within the district when the warrant is issued.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with the intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with the intent to distribute controlled substances) have been committed, are being committed, and will be committed by Alfonso GREER, Rico SMITH, and Lamar JOHNSON. Indeed, all three of those individuals were indicted on February 18, 2020, for federal controlled substance offenses, in Case No. 20 CR 041. There is also probable cause to believe that the locations of the Target Cellular Devices will constitute evidence of those criminal violations, including leading to the identification of individuals who are engaged in the commission of these offenses and identifying locations where Alfonso GREER, Rico SMITH, and Lamar JOHNSON engage in criminal activity.

6. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

7. In February of 2019, case agents initiated an investigation into a group of known and unknown drug traffickers operating in the Milwaukee area, known as the Buffum Meinecke Boys ("BMB"), including, Ramone LOCKE aka "Mone", Amir LOCKE aka "Big Mir", Joey VAZQUEZ aka "Joey", Louis BATES aka "Little Louis", Michael SMITH aka "M&M", Garrell HUGHES aka "Rello", Jesus PUENTES aka "JP", Coury AGEE aka "Lil C", Lamar JOHNSON aka "Fresh", Luis LORENZO aka "Pito", Victor GONZALEZ aka "Bey Bey", and others. As part of the investigation, case agents have interviewed several confidential sources, conducted physical and electronic surveillance, utilized pen registers, reviewed historical phone toll records, reviewed subpoenaed records of documents, and have conducted controlled purchases of cocaine, crack cocaine, and heroin. As a result of the intelligence provided by the confidential sources and the controlled purchases, along with information obtained from other law enforcement techniques, case agents have identified various members of the BMB and identified several sources of supply.

8. In December of 2019, a particular confidential source hereinafter designated as CS # 3 stated to law enforcement that he was familiar with BMB, and that BMB is comprised of members from different groups, identified as the East Side Mafioso, Buffum Chambers group, and Buffum Auer group. CS #3 stated that BMB has sets of cellular phones that generate drug profits for BMB. CS #3 stated that they (the BMB) share drug purchasers with each other to maximize profit. CS #3 stated that the cellular phones that

3

BMB use are from a previous drug dealer that was indicted; CS #3 stated that those phones were ported and are not used by BMB, which consisted of multiple cellular phones with the same contact list. CS #3 stated that by virtue of the drug dealing being utilized through these cellular phones, BMB is generating approximately one (1) million dollars a month. CS #3 provided names of persons involved within the BMB group, including Ramone LOCKE, Jesus PUENTES, Michael SMITH, Victor GONZALEZ, and Louis BATES.

9. Throughout the course of the investigation of BMB, case agents have made several controlled buys of controlled substances from members of BMB. Based on my training and experience, I know a "controlled buy" is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, s/he is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. A sample of the suspected drugs is then field tested by the case agents for the presence of controlled substances and then placed in inventory pursuant to normal inventory procedures. All of the calls to the target by the informants are consensually

4

recorded calls under the direction and control of case agents and made in the presence of case agents. Additionally, case agents observe the informants dial the target's number on each occasion and the contact is verified through telephone records.

10. On January 2, 2020, case agents met with CS #3 to conduct a controlled purchase of heroin from Rico L. SMITH (dob: 10/20/1990). CS #3 placed a consensually recorded telephone call to SMITH via 414.595.2473, where SMITH instructed CS #3 to Levels Nightclub, located at 634 West North Avenue, Milwaukee, Wisconsin. Case Agents conducted surveillance observed CS #3 enter the nightclub and a short time later, observed Dennis KING walk into the nightclub. CS #3 exited a short time later and met with case agents. Surveillance observed KING exit the nightclub, walk to North 6th Street and West North Avenue, and entered the Honda Fit, bearing a Wisconsin registration plate of 244-ZTR, which was used by co-conspirators and KING in previous controlled buys. CS #3 stated that KING asked CS #3 if CS #3 was there for "Rico" (Rico SMITH); KING directed CS #3 to the bathroom of Levels and provided CS #3 with the suspected heroin, in exchange for the controlled buy money. CS #3 observed KING provide the controlled buy money to a patron of Levels, who CS #3 identified as SMITH's brother. Case agents conveyed the suspected heroin to the District Five Police Station and conducted a test utilizing a Nark II 11 field test, which showed a positive result for opiates and fentanyl, with a weight of 50.98 grams.

11. On February 20, 2020, SMITH provided CS #3 with a new phone number, which SMITH indicated he would be using going forward: 414.243.6906.

5

12. On November 12, 2019, CS #3 contacted JOHNSON at 262.666.1673 and requested heroin. JOHNSON agreed, and set a predetermined meeting location near North Buffum Street and East Center Street in Milwaukee. At that location, CS #3 approached a Honda Fit bearing Wisconsin registration 244-ZTR, which has been utilized by multiple other members of the BMB. Inside were Dennis KING and Tracey Spivey. KING and CS #3 exchanged the controlled buy money for the requested heroin, which ultimately weighed 40.52 grams.

13. On February 21, 2020, the USMS was informed by the United States Probation Office that JOHNSON had provided the phone number of 414.949.2951 to that same office. Your affiant consulted with two law enforcement databases known in the past to be reliable and confirmed that JOHNSON is associated with the phone number of 414.949.2951.

14. On December 20, 2019, case agents met with CS #3 to conduct a controlled purchase of cocaine from Amir LOCKE. CS #3 placed a consensually recorded telephone call to Amir LOCKE via (414) 419-8956, where LOCKE answered and directed CS #3 to the area of North Vel R. Phillips Avenue and West McKinley Boulevard. CS #3 travelled to the location and met with a person, who was later identified as GREER. CS #3 travelled back to a predetermined meet location, where CS #3 stated that GREER exited the loft complex of 1300 North Vel R. Phillips Avenue, Milwaukee, Wisconsin, provided CS #3 with the suspected cocaine and walked back to the loft. CS #3 stated that GREER was one of Dawan TURNER's distributors and Victor GONZALEZ's cousin. Case agents

conveyed the suspected cocaine to the District Five Police Station and subjected a sample of the Cocaine to a Nark II 07 field test, which tested positive for cocaine, with a weight of 63.68 grams.

15. On January 10, 2020, CS #3 informed law enforcement that he believed GREER was utilizing telephone number 414.460.1820. Law enforcement reviewed historical call records associated with 414.460.1820 and determined that it has been actively and consistently communicating with 414.899.4939 – the known telephone number of Margarita Molinar, GREER's mother.

16. For several reasons, case agents believe CS #3 to be credible and reliable. First, CS #3 has been providing continuous information since September of 2019. Second, the information provided by CS #3 is consistent with evidence obtained elsewhere in this investigation where CS #3 was not utilized, and substantial portions of CS #3's information has been corroborated through independent investigation, including surveillance and information from other sources. CS #3 is cooperating for monetary compensation and has prior felony convictions for armed robbery, heroin trafficking and marijuana trafficking. CS #3 is currently on state supervised release. For these reasons, case agents believe CS #3 to be reliable.

17. Other law enforcement officials working with your affiant conducted a check of various law enforcement databases to confirm that 414.243.6906 and 414.460.1820 are serviced by T-Mobile, while 414.949.2951 is serviced by Sprint.

7

## MANNER OF EXECUTION

18. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

19. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Devices or receiving signals from nearby cellular devices, including the Target Cellular Devices. Such a device may function in some respects like a cellular tower, except that it will not be connected to a cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Devices and thereby prompt them to send signals that include the unique identifiers of the devices. Law enforcement may monitor the signals broadcast by the Target Cellular Devices and use that information to determine the respective locations of the Target Cellular Devices, even if they are located inside a house, apartment, or other building.

20. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the

8

interference with such devices. In order to connect with the Target Cellular Devices, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

22. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscribers or users of the Target Cellular Devices would seriously jeopardize the ongoing investigation, as such a disclosure would give

9

such persons an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Devices outside of daytime hours.

24. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

25. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

Clinton Blauser
Deputy United States Marshal

10

Subscribed and sworn to before me
On: __2/21/2020__

__/s/ William E. Duffin__
UNITED STATES MAGISTRATE JUDGE

11

# ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular devices assigned phone numbers 414.460.1820, 414.243.6906, and 414.949.2951, whose wireless providers are T-Mobile (414.460.1820; 414.243.6906) and Sprint (414.949.2951).

# ATTACHMENT B

Pursuant to an investigation of Alfonso GREER, Lamar JOHNSON, Rico SMITH, and others, both known and unknown, for violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with the intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with the intent to distribute controlled substances), this Warrant authorizes the officers to whom it is directed to determine the location of the cellular devices identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular devices for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular devices in response to radio signals sent to the cellular devices by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).